**Ralph K. MILLER, Relator,**

v.

**The Honorable Jack O'NEILL, Judge of the 152nd District Court of Harris County, Texas, Respondent.**

No. 01–89–00157–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 27, 1989.

Ralph K. Miller, New Braunfels, for relator.

Stanley B. Binion, Baker, Brown, Sharman & Parker, Houston, for respondent.

Before COHEN, SAM BASS and MIRABAL, JJ.

COHEN, Justice.

Ralph Miller, the relator, has filed a motion for leave to file petition for writ of mandamus seeking relief from the respondent's order denying discovery of the income tax returns and net worth statements of the real parties in interest, William Mac

Gann and Jim Perdue. Miller also seeks relief from another portion of the order that requires that trial be conducted under the "Wyoming Plan." The statement of facts from the discovery hearing is in the record before us.

This original proceeding arises from Miller's suit against Gann and Perdue alleging various causes of action including breach of fiduciary duty and seeking compensatory and exemplary damages. Miller served a request for production on Gann and Perdue seeking the following documents:

Copies of all U.S. Individual Income Tax Returns filed by you or in your behalf for the years 1977 to 1987, inclusive. Copies of all U.S. Partnership and/or Professional Corporation Income returns in which you have had an interest filed for the years 1977 to 1987, inclusive. Copies of all individual financial and/or net worth statements prepared by you or in your behalf for the years 1977 to 1987, inclusive. Copies of all partnership and/or professional corporation financial and/or net worth statements prepared by you or in your behalf for the years 1977 to 1987 inclusive.

Perdue sought a protective order and asserted the following objections to the request for production: 1) The request is overbroad; 2) it seeks discovery of irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence; 3) the information sought is a trade secret; and 4) the information sought is personal and confidential. Perdue admitted that present net worth is discoverable.

Gann asserted the following objections: 1) The request is overbroad; 2) it violates the privacy of persons—parties and non-parties; 3) it constitutes harassment; and 4) it seeks information that is not relevant and not likely to lead to the discovery of relevant evidence.

■ Gann moved for a protective order restricting the discovery to his net worth at the time of trial and seeking trial of the case under the "Wyoming Plan." The plan provides for a bifurcated trial on the issue of exemplary damages:

At trial, if evidence is produced making a prima facie case of punitive damages, the verdict form will make provision for compensatory damages and further ask the jury whether punitive damages should or should not be awarded. However, no provision would be made for the jury to determine the amount of punitive damages to be awarded at that point.

If the jury finds that punitive damages should be awarded, it then hears evidence of the defendant's financial status and returns a separate verdict setting the award of punitive damages.

*Campen v. Stone,* 635 P.2d 1121, 1132 (Wyo.1981).

The respondent did *not* conduct an in camera inspection of the requested documents, *see Loftin v. Martin,* 776 S.W.2d 145, 148, (1989), and the parties elicited no testimony showing the need for a protective order. The respondent then entered the following order:

Accordingly, it is ORDERED, ADJUDGED AND DECREED that the Motions for Bifurcated Trial are granted, and the trial of this cause shall proceed under the Wyoming Plan; it is, further ORDERED, ADJUDGED AND DECREED that the Defendants' Motions for Protective Order are granted, and they are not required to produce at this time the individual or partnership income tax returns or financial statements, pending any further orders from this Court.

The respondent signed this order on February 2, 1989, when the case was set for trial on April 17, 1989.

The issues presented are: 1) whether the respondent abused his discretion in not ordering the requested documents produced, and 2) whether the respondent abused his discretion in ordering the case tried under the "Wyoming Plan." Gann and Perdue do not want to produce information about their net worth until the jury has answered the liability issues against them and has decided that punitive damages are appropriate.

The Wyoming Supreme Court relied heavily upon the availability of pretrial discovery in determining that a bifurcated trial was a feasible procedure. The "Wyoming Plan" dictates the following procedure for discovery of information concerning net worth:

1. The plaintiff may claim in his complaint a right to punitive damages and then seek pretrial discovery of a defendant's wealth.

2. Defendant may move for a protective order requiring the plaintiff to make a prima facie showing to the trial court that a viable issue exists for punitive damages. Upon such a showing, the pretrial discovery would be allowed.

*Campen*, 635 P.2d at 1132. The following passages show the court's emphasis on pretrial discovery of net worth:

"However, we do not read the New Jersey decision as requiring a special jury verdict on punitive damages before permitting discovery. Rather, what the New Jersey court concluded was that a prima facie showing had to be made of the right to recover punitive damages before a general disclosure of a defendant's wealth can be compelled...." [*Cobb v. Superior Court, County of Los Angeles,* 99 Cal.App.3d 543] 160 Cal. Rptr. [561] at 564–65 [ (1979) ].

. . . .

We do not understand the reluctance of the California and Tennessee courts to adopt the bifurcation of the trial. If the wealth of a defendant is allowed to be discovered *prior to trial* upon a prima facie showing of willful and wanton misconduct, no unnecessary delay will occur.... So long as discovery is allowed *before trial*, there should be no delay once a jury decides punitive damages should be awarded. The evidence of a defendant's wealth can be submitted right then, and the jury can deliberate further on the proper amount to be awarded.

*Campen,* 635 P.2d at 1130–31 (footnote omitted) (emphasis added).

The "Wyoming Plan's" requirement that a plaintiff make a prima facie showing "that a viable issue exists for (punitive) damages" was expressly rejected by the Texas Supreme Court in *Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex.1988):

Our rules of civil procedure and evidence do not require similar practices before net worth may be discovered. Absent a privilege or specifically enumerated exemption, our rules permit discovery of any "relevant" matter; thus, there is no evidentiary threshold a litigant must cross before seeking discovery.

■ From this, we conclude that the pretrial discovery of a defendant's net worth is not precluded, but is mandated. Thus, neither the "Wyoming Plan" nor Texas law provides a basis for prohibiting the pretrial discovery of net worth.

Because the respondent did not specify the grounds that he relied upon in prohibiting the discovery, we must examine the specific grounds for objection asserted in Gann's and Perdue's objections and motions for protective orders to determine whether any one of them supports the respondent's order.

■ The Texas Supreme Court has held that "in cases in which punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth." *Lunsford,* 746 S.W.2d at 473. The court declared a defendant's net worth to be "relevant" in a suit involving exemplary damages. *Id.* Miller seeks punitive damages, which are recoverable for a willful breach of a fiduciary duty. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 584 (Tex.1963); *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 319 (Tex.App.—Tyler 1985, no writ). Thus, documents showing the net worth of Gann and Perdue are relevant and discoverable.[1]

---

**1.** The fact that the trial judge may later allow the requested discovery is irrelevant.

[T]he trial court's willingness to reconsider does not alter the finality of its ruling. Litigants can always make new arguments that may change the trial court's mind. This does not, however, preclude complaining of the action already taken.

Although Gann and Perdue claimed that the discovery request was harassing, they produced no evidence to support their claim in the trial court; therefore, the trial court could not prohibit discovery on this basis. *Mole v. Millard,* 762 S.W.2d 251, 254 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding); *Independent Insulating Glass/Southwest, Inc. v. Street,* 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, orig. proceeding).

■ Gann and Perdue also claimed that Miller's requests were overbroad. The requests are limited to: 1) income tax returns, financial statements, or net worth statements; 2) of the defendants and any partnerships and professional corporations they have had an interest in; and 3) for the years 1977 to 1987. Miller alleges that the partnership in question existed from 1968 to 1979. In light of the length of the alleged partnership's existence, and the relevancy of the defendants' net worth, this request is not obviously overbroad, at least as to the period from 1977 to 1979. No evidence was presented showing that the request was overbroad as to the period from 1979 to 1987. *See Mole,* 762 S.W.2d at 253–54. Thus, the record reflects no basis on which to exclude these documents from discovery.

■ Gann and Perdue also asserted that Miller's request violated their right to privacy. Gann additionally asserted that the requests covering partnership and professional corporation records sought irrelevant information and violated the privacy rights of other persons who are not parties to this litigation, whereas Gann's income and interests in said partnerships and professional corporations would be reflected in his own tax returns and financial statements. Clearly, requests for financial records invade personal privacy rights. However, the supreme court has allowed such discovery, despite the inevitable intrusion. *Lunsford,* 746 S.W.2d at 473. The record does not indicate that the requested documents do not contain relevant net worth information; therefore, no impermissible invasion of privacy rights is shown. *Jampole v. Touchy,* 673 S.W.2d 569, 574 (Tex. 1984).

Perdue also claimed that the requested documents contained trade secrets. Tex.R. Civ.Evid. 507. Again, no evidence was presented to establish this claim. Tex.R. Civ.P. 166b(4).

We conclude that none of Gann's and Perdue's objections support the trial court's order prohibiting the pretrial discovery of net worth. Accordingly, the respondent abused his discretion in prohibiting the pretrial discovery of net worth.

■ Finally, assuming, without so ruling, that relator has no adequate remedy by appeal, the trial court's action ordering a "Wyoming Plan" trial cannot be characterized as an abuse of discretion. The law does not plainly prohibit a bifurcated trial on punitive damages. Therefore the respondent did not clearly abuse his discretion or violate a clear duty under the law. *Abor v. Black,* 695 S.W.2d 564, 567 (Tex. 1985).

The writ of mandamus is conditionally granted concerning that portion of the trial court's order prohibiting the pretrial discovery of requested documents reflecting net worth information, but is denied in all other respects. We are confident that the respondent will vacate that portion of his order prohibiting the pretrial discovery of the requested documents reflecting net worth information, and a writ of mandamus will issue only if he fails to do so.